LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SHAUN THOMPSON and MARCELLA WATT,
*on behalf of themselves, FLSA Collective Plaintiffs,*
*and the Class*,

                Plaintiffs,

      v.

ELEV8 FOUNDATION INC.
      d/b/a ELEV8 CENTERS
      d/b/a ELEV8
URBAN RECOVERY HOUSE, LLC
      d/b/a URBAN RECOVERY
LEE WEISS,
and DONNA MAE DEPOLA,

                Defendants.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Jury Trial Demanded

      Plaintiffs, SHAUN THOMPSON ("Plaintiff THOMPSON") and MARCELLA WATT

("Plaintiff WATT") (collectively, "Plaintiffs"), on behalf of themselves, FLSA Collective

Plaintiffs and the Class, by and through their undersigned attorneys, hereby file this Class and

Collective Action Complaint against Defendants ELEV8 FOUNDATION INC. d/b/a ELEV8

CENTERS d/b/a ELEV8 ("Defendant ELEV8," or "ELEV8") and URBAN RECOVERY HOUSE, LLC, d/b/a URBAN RECOVERY ("Defendant URBAN RECOVERY," or "URBAN RECOVERY") (collectively, the "Corporate Defendants"), LEE WEISS, and DONNA MAE DEPOLA (the "Individual Defendants"; and, together with the Corporate Defendants, "Defendants") and states as follows:

## INTRODUCTION

1.  Plaintiffs allege, pursuant to the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that they and FLSA Collective Plaintiffs are entitled to recover from Defendants: (1) unpaid overtime, (2) unpaid wages due to time-shaving, (3) liquidated damages and (4) attorneys' fees and costs.

2.  Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime, (2) unpaid wages due to time-shaving, (3) statutory penalties, (4) liquidated damages, and (5) attorneys' fees and costs.

3.  Plaintiff THOMPSON further alleges that Defendants unlawfully retaliated against him, in violation of the NYLL, and thus seeks to additionally recover from Defendants (1) economic damages, (2) punitive damages, and (3) attorneys' fees and costs.

4.  Plaintiff THOMPSON additionally alleges that he was deprived of his statutory rights as a result of Defendants' unlawful discrimination practices, in violation of New York State Human Rights Law, New York Executive Law § 296 ("NYSHRL"), and New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL") and brings this action against Defendants to recover (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

2

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§ 1331, 1337, and 1343, and has supplemental jurisdiction over the state law claims of Plaintiff, FLSA Collective Plaintiffs and members of the Class pursuant to 28 U.S.C. §1367.

6. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

7. Plaintiff THOMPSON is a resident of New York County, New York.

8. Plaintiff WATT is a resident of Kings County, New York.

9. Defendants operate multiple addiction treatment facilities as a single integrated enterprise under the trade names "ELEV8 CENTERS," "ELEV8," and "URBAN RECOVERY" in the state of New York. Defendants own and operate addiction treatment facilities at the following locations in New York City:

   a. 151 West 136th Street, New York, NY 10030 ("ELEV8"); and

   b. 411 Van Brunt Street, Brooklyn, NY 11231 ("URBAN RECOVERY") (collectively, the "Facilities").

10. The Facilities are commonly owned and operated by Defendants as a single integrated enterprise. The Facilities are advertised on the following websites: https://elev8centers.com/ and https://urbanrecovery.com/. Attached hereto as **Exhibit A** is a screenshot of the main webpage for ELEV8, located at https://elev8centers.com. Attached hereto as **Exhibit B** is a screenshot of the main webpage for URBAN RECOVERY, located at https://urbanrecovery.com/. Attached hereto as **Exhibit C** is a screenshot taken from ELEV8's Facebook page,

https://www.facebook.com/Elev8Centers/. Attached hereto as **Exhibit D** is a screenshot taken from URBAN RECOVERY's Facebook webpage https://www.facebook.com/urbanrecoverynyc/ attached hereto as **Exhibit E** is a screenshot taken from ELEV8's webpage, https://twitter.com/Elev8Centers; attached hereto as **Exhibit F** is a screenshot taken from URBAN RECOVERY's Twitter webpage, https://twitter.com/urbanrecoveryny.

11.  The Facilities are engaged in related activities, share common ownership, and have a common business purpose:

   a.  Individual Defendant LEE WEISS is the CEO of the Corporate Defendants and manages the Facilities. *See* **Exhibit G** (Google sites website describing that "Lee Weiss is managing two addition recovery and wellness services centers in New York – Elev8 Centers & Urban Recovery House. While the former is a 75-bed inpatient facility in Harlem, NY, Urban Recovery is a 36-bed facility in Brooklyn, NY."

   b.  Employees are interchangeable among the Facilities—Defendants not only directed Plaintiff THOMPSON to work at URBAN RECOVERY after he previously worked for ELEV8, Defendants continue to transfer employees between the Facilities;

   c.  The content of Defendants' Twitter posts for each of the Facilities are frequently virtually identical. *See* **Exhibit H** (presenting sample Twitter posts of the same); and

   d.  The Facilities share payroll methods and have a single, centralized system of labor relations for employees.

12. Defendant ELEV8 CENTERS is a domestic not-for-profit corporation organized under the laws of the State of New York, with a principal place of business and address for service of process located at 151 West 136th Street, New York, NY 10030.

13. Defendant URBAN RECOVERY is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 411 Van Brunt Street, Brooklyn, NY 11231, and an address for service of process located at Michael Mosberg C/O Adam Kaufman Esq., 585 Stewart Avenue, Suite 302, Garden City, NY 11350.

14. At all relevant times, Defendants were and are "enterprise[s] engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

15. Individual Defendant LEE WEISS is the Chief Executive Officer of the Corporate Defendants. At all relevant times, Defendant LEE WEISS has exercised control over the employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs and Class members. Defendant LEE WEISS has exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee work schedules, and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs and Class members. At all relevant times, employees could complain to Defendant LEE WEISS regarding any of the terms of their employment, and Defendant LEE WEISS possessed the authority to effect any changes to the quality or terms of their employment. Defendant LEE WEISS ensured that employees effectively served customers and exercised functional control over the business and financial operations of Corporate Defendant. Defendant LEE WEISS had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members, and could reprimand employees.

16. Individual Defendant DONNA MAE DEPOLA is the Chief Executive Officer of the Corporate Defendants. At all relevant times, Defendant DONNA MAE DEPOLA has exercised control over the employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs and Class members. Defendant DONNA MAE DEPOLA has exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee work schedules, and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs and Class members. At all relevant times, employees could complain to Defendant DONNA MAE DEPOLA regarding any of the terms of their employment, and Defendant DONNA MAE DEPOLA possessed the authority to effect any changes to the quality or terms of their employment. Defendant DONNA MAE DEPOLA ensured that employees effectively served customers and exercised functional control over the business and financial operations of Corporate Defendant. Defendant DONNA MAE DEPOLA had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members, and could reprimand employees.

17. Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

18. At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class members were directly essential to the businesses operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

19. Plaintiff s bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees, including, but not limited to, the counselors, nurses, and patient care coordinators employed by Defendants

on or after the date that is six (6) years before the filing of the Complaint in this case ("FLSA Collective Plaintiffs").

20. At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules—all of which have culminated in a willful failure and refusal by Defedants to pay Plaintiffs and FLSA Collective Plaintiffs their proper (i) overtime compensation at the rate of one and one half times the regular hourly rate for work in excess of forty (40) hours each week, and (ii) compensation for all hours worked but for which they have not yet compensated due to Defendants' time-shaving practices. The claims of Plaintiffs as stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

21. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

22. Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of all current and former non-exempt employees, including but not limited to the counselors, nurses, and patient care coordinators who were employed and unjustly compensated by Defendants, throughout New York State, on or after the date that is six (6) years before the filing of the Complaint in this case (the "Class").

23. The Class members are readily ascertainable. The number and identity of the Class

members are determinable from the records of Defendants. The hours assigned and worked, the titles of the positions held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under FRCP 23.

24. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

25. Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All of the Class members were subject to the same corporate practices of Defendants, as alleged herein, including but not limited to Defendants' (i) failing to pay proper overtime compensation for all hours worked in excess of forty (40) hours each week; (ii) failing to pay regular and overtime compensation for all hours worked due to a practice of time-shaving, (iii) failing to provide Class members with proper wage statements in compliance with the New York Labor Law, and (iv) failing to properly provide wage and hour notices to Class members upon hiring and as required thereafter, pursuant to the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures carried out by Defendants.

26. Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and have previously represented plaintiffs in wage and hour cases.

27. A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently

manage this action as a class action.

28. Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Both current and former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

29. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a) Whether Defendants employed Plaintiff and the Class members within the meaning of the New York law;

    b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiffs and the Class;

    c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiffs and the Class members for their work;

    d) Whether Defendants failed to properly compensate Plaintiffs and Class members for overtime under state and federal laws for all hours worked in excess of forty (40) each week;

    e) Whether Defendants practiced a policy of time-shaving;

f) Whether Defendants provided to Plaintiffs and Class members proper wage and hour notice, on the date of hiring and annually thereafter, to all non-exempt employees, per the requirements of the NYLL; and

g) Whether Defendants provided to Plaintiffs and Class members proper wage statements with each payment of wages, as required by the NYLL.

## STATEMENT OF FACTS

30. **Plaintiff SHAUN THOMPSON ("Plaintiff THOMPSON")**

(a) In or around December 2018, Plaintiff THOMPSON was hired by Defendants and/or their predecessors, as applicable, to work as a counselor at ELEV8. Plaintiff THOMPSON's employment with Defendants at ELEV8 was terminated in or around December of 2019. In or around March 2020, Plaintiff THOMPSON was rehired by Defendants and/or their predecessors, as applicable, to work as a counselor at URBAN RECOVERY. Plaintiff THOMPSON's employment with Defendants terminated in or around April 2020, upon Defendants' unlawfully retaliating against Plaintiff, as described more fully below.

(b) Plaintiff THOMPSON's employment with Defendants at the ELEV8 location from in or around December 2018 to December 2019 ended on good terms. In fact, upon becoming reemployed by Defendants in or around March 2020, Defendants directed Plaintiff THOMPSON to work at URBAN RECOVERY, particularly to address understaffing concerns at that location.

(c) As Plaintiff THOMPSON made preparations to begin his work at URBAN RECOVERY, Defendants further directed Plaintiff THOMPSON to speak with Trevor LAST NAME UNKNOWN ("LNU") in his transition from ELEV8 to URBAN RECOVERY. Not only was Trevor LNU a counselor PLAINTIFF THOMPSON formerly worked with at ELEV8,

11

TREVOR LNU had also since been transferred by Defendants to work as a clinical supervisor at URBAN RECOVERY.

(d) Among their topics of discussion regarding Plaintiff THOMPSON's transition between the Facilities, TREVOR LNU expressly advised Plaintiff THOMPSON to be wary of one MANNY LAST NAME UNKNOWN, Operations Director at URBAN RECOVERY. In particular, Trevor LNU warned Plaintiff THOMPSON that Manny LNU had a reputation for harassing employees and making discriminatory comments. Trevor LNU and Plaintiff THOMPSON are both African American.

(e) Trevor LNU further explained to Plaintiff THOMPSON that, despite the fact that many employees at URBAN RECOVERY have repeatedly apprised Defendants of Manny LNU's verbal harassment and discriminatory conduct, Defendants have routinely turned a blind eye and deaf ear to employees' concerns for the same.

(f) Attached hereto as **Exhibit I** is a true and correct copy of Defendant's URBAN RECOVERY Facebook page, depicting a now-deleted comment—ostensibly made by a former, aggrieved employee[1] with Defendants—on a post made by URBAN RECOVERY on July 29, 2020. In most relevant part, the commenter stated the following:

> "Worst company to work for. Hiring boss,[] Manny, [] fills
> employees with false hopes and expectations. Cheats you out of

---

[1] For purposes of this Complaint, Plaintiffs have redacted the commenter's name to preserve their identity. Plaintiffs' further state here that (1) the subject Facebook comment was not made by either named Plaintiff in this action—nor did they have any involvement in its being posted on Defendant's URBAN RECOVERY Facebook page; and (2) should the Court or Defendants request the commenter's name, Plaintiffs are willing and able to immediately produce the same under seal. The unadulterated photograph depicted in **Exhibit I** was taken on or around September 20, 2020.

the pay he promises you & overtime hours. People with no experience nor degrees, [] certifications or education get paid more[] (especially if you're a man). The absolute most horrible experience I've ever had working for a company."

(g) Attached hereto as **Exhibit J** is a true and correct copy of Defendants' URBAN RECOVERY Facebook page reflecting the same July 29, 2020 post, but which now states "Most Relevant is selected, so some comments may have been filtered out." Notably, the same post still also represents that "1 Comment" was made—presumably, the one set forth in the preceding paragraph of this Complaint—yet viewers of this Facebook page can no longer access this singular comment included on URBAN RECOVERY's July 29 Facebook post.

(h) Throughout his employment with Defendants, Plaintiff THOMPSON routinely worked in excess of forty (40) hours each week. Specifically, Plaintiff THOMPSON was scheduled to work five (5) days per workweek for eight and a half (8.5) hours per workday, from 7:30 a.m. to 4:00 p.m., totaling forty-two and a half (42.5) hours each week. Moreover, Plaintiff THOMPSON was routinely required by Defendants to stay after 4:00 p.m. and perform work on the weekends, as needed. Plaintiff THOMPSON was paid straight time at a rate of $18.50 per hour.

(i) Throughout his employment with Defendants, Plaintiff THOMPSON was not compensated for all his hours worked. Plaintiff THOMPSON was automatically deducted a one (1) hour meal break each shift despite the fact that he rarely took the full hour break, as he was routinely required to perform work during that time period. Due to Defendants' time-shaving practices, Plaintiff THOMPSON did not receive his proper regular and overtime compensation for his off-the-clock work.

13

(j) In addition, Defendants unlawfully retaliated against Plaintiff THOMPSON in April 2020.

(k) In or around March 2020, and in response to the COVID-19 pandemic, Defendants began a policy and practice of having in-house nursing staff—equipped with a facemask and gloves—to administer temperature checks upon an employee's arrival at work.

(l) For the approximately first two weeks of his employment at URBAN RECOVERY, Plaintiff THOMPSON experienced no issues whatsoever with having his temperature taken in a safe and sanitary manner from the attending in-house nurse at the URBAN RECOVERY; nor did Plaintiff THOMPSON ever manifest any COVID-19 symptoms.

(m) However, at the beginning of what would be his final workweek in or around April 2020, Plaintiff THOMPSON encountered issues the moment he arrived at URBAN RECOVERY. Specifically, Plaintiff THOMPSON observed that the individual, Victoria LAST NAME UNKNOWN ("Victoria LNU"), taking temperatures at the Facility was neither an in-house nurse nor wearing gloves or a mask. Concerned that Victoria LNU's actions constituted a violation of, *inter alia*, the face mask mandate issued by the New York State Government—which in turn unduly exposed Plaintiff THOMPSON and others to the risk of catching COVID-19—Plaintiff THOMPSON requested that Victoria LNU please put on gloves and a mask while administering temperature checks at URBAN RECOVERY. Plaintiff further believed this was a sound request given that Victoria LNU was attempting to take temperatures at a rehabilitation facility, which typically emphasizes best sanitation practices. And yet, Victoria LNU disregarded the baseline health and safety requirement of wearing a mask needed to even walk the streets of New York City in the midst of the COVID-19 pandemic.

(n) Victoria LNU not only immediately objected to Plaintiff THOMPSON's request that she equip personal protective equipment while administering temperature checks, she also called over Manny LNU. Manny LNU then proceeded to hurl a series of racially discriminatory insults and threats of physical injury directly towards Plaintiff THOMPSON in stating, "I don't give a fuck if she's [Victoria LNU's] not wearing gloves, take your temp or get the fuck out of here. Or you can wait until 4:00 p.m. and fight me"; and "Get your black ass out of here! Get out of my building!" Shortly thereafter, Plaintiff THOMPSON was directed by Manny LNU to exit URBAN RECOVERY, and was informed by Defendants to not return to the workplace until being provided further notice. Both Victoria LNU and Manny LNU are both Caucasian and/or are otherwise fair in complexion. But for the fact that Plaintiff THOMPSON was African American, Victoria LNU and Manny LNU would not have treated him that way.

(o) Later that same workweek in April 2020, Plaintiff THOMPSON was unlawfully retaliated against when he was notified by Defendants that his employment was terminated effective immediately. The only reason he was terminated was due to his skin color and the disparate treatment he suffered from Defendants.

31. **Plaintiff MARCELLA WATT ("Plaintiff WATT")**:

(a) In or around September 2018, Plaintiff WATT was hired by Defendants, and/or, their predecessors, as applicable, to work as a patient care coordinator at ELEV8. From in or around September 2018 to April 2018, Plaintiff WATT was regularly scheduled to work two (2) days per workweek for eight and one half (8.5) hours per workday, from 3:00 p.m. to 11:30 p.m., for a total of approximately seventeen (17) hours per workweek. From in or around April 2018 to March 2019, Plaintiff WATT was regularly scheduled to work three (3) days per workweek for eight and one half (8.5) hours per workday, from 3:00 p.m. to 11:30 p.m., for a total of

approximately twenty-five and one half (25.5) hours per workweek  From in or around March 2020 through the present, Plaintiff WATT has been regularly scheduled to work five (5) days per workweek for eight and one half  (8.5) hours per workday, from 3:00 p.m. to 11:30 p.m., for a total of approximately forty-two and a half (42.5) hours per workweek. Plaintiff WATT was paid a straight time rate of $15 per hour.

(b) Throughout her employment with Defendants, Plaintiff WATT was not compensated for all her hours worked. At all relevant times, Plaintiff WATT was automatically deducted a one (1) hour meal break each shift despite the fact that she rarely took the full hour break, as she was routinely required to perform work during that time period. Due to Defendants' time-shaving practices, Plaintiff WATT did not receive her proper compensation—including unpaid overtime for all hours she worked in excess of forty each week, beginning in or around March 2020—for her off-the-clock work. In addition, on the occasions where Plaintiff WATT has arrived at ELEV8 approximately thirty (30) minutes prior to the start of her scheduled shift, Defendants have routinely directed her to begin performing off-the-clock work before Plaintiff WATT actually clocked in at 3:00 p.m.

32. Based on Plaintiffs' respective observations and discussions with other employees, FLSA Collective Plaintiffs and Class members have similarly suffered from Defendants' unlawful time-keeping policies and practices; FLSA Collective Plaintiffs and Class members have thus similarly been deprived of their proper regular and overtime compensation for all work performed by them for Defendants.

33. Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA overtime rate (of time and one-half) or the New York State overtime rate

(of time and one-half) to Plaintiffs, FLSA Collective Plaintiffs, and the Class for all hours worked in excess of forty (40) each week.

34. Defendants knowingly and willingly failed to pay Plaintiff, FLSA Collective Plaintiffs, and the Class regular and overtime wages for all hours worked due Defendants' time-shaving practices.

35. Defendants knowingly and willfully made unlawful meal break deductions from Plaintiffs, FLSA Collective Plaintiffs, and Class members' paychecks.

36. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements, as required under the NYLL.

37. Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to employees, at the beginning of employment and at dates of all wage changes thereafter, pursuant to the requirements of the NYLL.

38. Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATIONS OF THE FAIR LABOR STANDARDS ACT

### ON BEHALF OF PLAINTIFFS AND FLSA COLLECTIVE PLAINTIFFS

39. Plaintiffs reallege and reaver Paragraphs 1 through 38 of this Class and Collective Action Complaint as if fully set forth herein.

40. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the

17

FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

41. At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

42. At all relevant times, Defendants had gross annual revenues in excess of $500,000.

43. At all relevant times, the Defendants had a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and FLSA Collective Plaintiffs for their hours worked in excess of forty (40) per workweek.

44. Defendants failed to compensate Plaintiffs and FLSA Collective Plaintiffs for all hours worked due to time-shaving, including all hours worked in excess of forty (40) each week.

45. Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs, and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

46. Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

47. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

48. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime, plus an equal amount as liquidated damages.

18

49. Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATIONS OF THE NEW YORK LABOR LAW

## ON BEHALF OF PLAINTIFFS AND CLASS MEMBERS

50. Plaintiffs reallege and reaver Paragraphs 1 through 49 of this Class and Collective Action Complaint as if fully set forth herein.

51. At all relevant times, Plaintiffs and Class members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

52. Defendants willfully violated the rights of Plaintiffs and Class members by failing to pay Plaintiffs and Class members the proper overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours each workweek.

53. Defendants willfully violated the rights of Plaintiffs and Class members, by practicing a policy of time-shaving, in violation of the NYLL.

54. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiffs and other non-exempt employees, as required by the NYLL. Defendants are required to provide accurate and proper information on wage statements issued to employees in accordance with the NYLL.

55. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiffs and other non-exempt employees with proper wage notices, at date of hiring and at dates of all wage changes thereafter, in violation of the NYLL.

56. Due to the Defendants' NYLL violations, Plaintiffs and Class members are entitled to recover from Defendants their unpaid wages, including overtime, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to the NYLL.

## COUNT III

## RETALIATION UNDER THE NEW YORK LABOR LAW

## AGAINST PLAINTIFF THOMPSON

57. Plaintiff THOMPSON realleges and reavers Paragraphs 1 through 56 of this Class and Collective Action Complaint as if fully set forth herein.

58. Defendants willfully violated the New York Labor Law by retaliating against Plaintiff THOMPSON in discharging him shortly after he raised concerns about Defendants' failure to implement even the most basic health and safety guidelines in administering COVID-19 temperature checks in the workplace—*i.e.*, with a face mask covering.

59. Defendants' actions constitute a violation of Sections 215 and 200 of the NYLL, as well as Sections 66-3.2(c)–(d) of the New York Codes, Rules, and Regulations ("NYCRR").

60. In relevant part, NYLL § 215(1)(a) states:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, <u>reasonably and in good faith, believes violates any provision of this chapter</u>, or any order issued by the commissioner. . . . (emphasis added).

61.  In relevant part, NYLL § 200 states:

> General duty to protect health and safety of employees;
> enforcement. 1. All places to which this chapter applies shall be so
> constructed, equipped, arranged, operated and conducted as to
> provide reasonable and adequate protection to the lives, health and
> safety of all persons employed therein or lawfully frequenting such
> places.

62. Specifically, in this case, Defendants breached their general duty to protect the health

and safety of their employees by failing to require their employees properly equip a face mask

covering, even when administering temperature checks, in violation of Sections 66-3.2(c)–(d) of

the NYCRR, which mandates as follows:

> (c) Any employee who is present in the workplace shall be
> provided and shall wear a mask or face-covering when in direct
> contact with customers or members of the public, or when unable
> to maintain social distance. Businesses must provide, at their
> expense, such face coverings for their employees.

> (d) Business operators and building owners, and those authorized
> on their behalf or otherwise authorized to use the building shall
> deny admittance to any person who fails to comply with this
> section and shall require or compel such persons' removal.
> Provided, however, that this regulation shall be applied in a
> manner consistent with the federal American with Disabilities Act,
> New York State or New York City Human Rights Law, and any
> other applicable provision of law.

63. Far from enforcing NYCRR § 66-3.2(c)–(d), Defendants affirmatively and unlawfully

retaliated against Plaintiff THOMPSON for calling Defendants' attention to the health risks

posed by an employee's (Victoria LNU's) non-compliance with the mask mandate.

64. Plaintiff THOMPSON suffered economic losses, as well as emotional and mental

distress from Defendants' retaliatory actions and having his employment terminated shortly after

apprising Defendants of the health and safety concerns associated with Victoria LNU's failure to

equip personal protective equipment while administering temperate checks at URBAN RECOVERY.

65. Due to Defendants' retaliation, Plaintiff THOMPSON is entitled, pursuant to the NYLL, to recover from Defendants back and front pay, compensatory damages, punitive damages, and all other penalties the Court deems appropriate.

## COUNT IV

## <u>VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW</u>

## <u>AGAINST PLAINTIFF THOMPSON</u>

66.  Plaintiff THOMPSON realleges and reavers Paragraphs 1 through 65 of this Class and Collective Action Complaint as is fully set forth herein.

67. Plaintiff THOMPSON is an employee and a qualified person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

68. Defendants violated Plaintiff THOMPSON's statutorily protected rights under the NYSHRL, New York Executive Law §296, by engaging in discriminatory employment practices and subjecting him to a hostile work environment based on his race.

69. Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff THOMPSON's protected rights under the NYSHRL.

70. As a result of Defendants' unlawful employment practices, Plaintiff THOMPSON sustained injury, including economic damages, the past and future emotional distress, and the costs of bringing this action.

71. Due to Defendants' violation under the NYSHRL, based on racial discrimination, Plaintiff THOMPSON is entitled to recover from Defendants: (1) an injunction ordering

22

Defendants to cease its discriminatory practices as described herein, (2) economic damages, and (3) compensatory damages.

## COUNT V

## <u>VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW</u>

## <u>AGAINST PLAINTIFF THOMPSON</u>

72. Plaintiff THOMPSON realleges and reavers Paragraphs 1 through 71 of this Class and Collective Action Complaint as if fully set forth herein.

73. Plaintiff THOMPSON is an employee and a qualified person within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

74. Defendants violated Plaintiff THOMPSON's statutorily protected rights under the NYCHRL, Administrative Code of the City of New York §8-107, by engaging in discriminatory employment practices and subjecting him to a hostile work environment based on his race.

75. Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff THOMPSON's protected rights under the NYCHRL.

76. As a result of Defendants' unlawful employment practices, Plaintiff THOMPSON sustained injury, including economic damages, past and future emotional distress, and the costs of bringing this action.

77. Due to Defendants' violation under the NYCHRL based on racial discrimination, Plaintiff THOMPSON is entitled to recover from Defendants: (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully requests that this Court grant the following relief:

a.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.   An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.   An award of unpaid regular and overtime compensation resulting from Defendants' policy of time-shaving, and which is due under the FLSA and the NYLL;

d.   An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

e.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay regular and overtime compensation pursuant to the FLSA and NYLL;

f.   An award of costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

g.   An award of statutory penalties, and prejudgment and post-judgment interest;

h.   An award of compensatory damages for Plaintiff's injury resulting from Defendants' unlawful discriminatory practices, pursuant to the NYSHRL and NYCHRL;

i.   An award of punitive damages for Defendants' unlawful discriminatory practices against Plaintiff, pursuant to the NYCHRL;

j.  An award of back and front pay, compensatory damages, punitive damages, and all other penalties the Court deems appropriate as a result of Defendants' willful retaliatory conduct against Plaintiff THOMPSON, pursuant to the NYLL;

k.  Designation of Plaintiffs as Representative of the FLSA Collective Plaintiffs;

l.  Designation of this action as a Class Action pursuant to FRCP 23;

m.  Designation of Plaintiffs as Representative of the Class; and

n.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: November 13, 2020

Respectfully submitted,

By:   */s/ C.K. Lee*
C.K. Lee, Esq.

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs and the Class*