

**Jalise Burt**
*Associate*
Phone: 212-592-1592
Fax: 212-545-3326
jburt@herrick.com

November 16, 2021

**VIA ECF**

The Honorable James L. Cott
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *Thompson et al. v. Elev8 Center NY, LLC et al.*, No. 20 Civ. 9581 (PGG) (JLC) – Request for a Discovery Conference Regarding Plaintiffs' Discovery Deficiencies

Dear Judge Cott:

      We represent Defendants Elev8 Center NY LLC ("**Elev8 Center**"), Urban Recovery, LLC ("**Urban Recovery**"), and Donna Mae Depola (together, "**Defendants**") in the above-referenced matter. We write in advance of the December 1, 2021 conference with the Court as to Plaintiffs' discovery deficiencies. Plaintiffs' Responses to Defendants' document requests and interrogatories ("**Plaintiffs' Discovery Responses**") are attached hereto as Exhibit 1.

      Defendants certify that Jalise Burt, Esq. counsel for Defendants, telephonically met and conferred with Tenzin Tashi, Esq., Counsel for Plaintiffs Shaun Thompson and Marcella Watt ("**Plaintiffs**"), regarding the parties' respective discovery responses on Thursday, November 4, 2021 at 4:00 p.m. During the conference, the undersigned informed Plaintiffs' counsel that the parties had reached an impasse concerning Defendants' discovery requests and would be requesting a conference with the Court.

      **A.  Deficiencies in Document Request Responses**

      Notably, Plaintiffs have not produced ***any*** documents in response to Defendants' requests. During the meet and confer, Plaintiffs' counsel represented that Plaintiffs were not withholding documents. However, it is simply not credible that neither Plaintiff would have a single responsive document to Defendants' extensive requests. Thus, Defendants respectfully request that the Court order Plaintiffs to each submit an affidavit attesting to not having any responsive documents. See Marano v. Aaboe, No. 05 Civ. 9375, 2007 WL 631348, at *4 (S.D.N.Y. Feb. 27, 2007) (directing the requested party to "produce any outstanding responsive documents, or file a sworn affidavit stating that none such documents exist."); Aldinger v. Alden State Bank, No. 1:17 Civ. 1024, 2020 WL 3000759, at *4 (W.D.N.Y. June 4, 2020) (directing the requested party to



November 16, 2021
Page 2

provide an affidavit on "documents that cannot be produced because they do not exist or are not in [the requested party's] control.").

In the event affidavits are not provided, or Plaintiffs claim that they do not have to produce documents due to objections, we request that the Court address Plaintiffs' specific objections, as set forth below, and compel production of documents, in light of Plaintiffs' ongoing duty to supplement or correct their responses, Fed. R. Civ. P. 26(e):

**Document Request Nos. 1-23, 29, 30** In response to twenty-five of Defendants' thirty-one requests, Plaintiffs object, in part, that Defendants seek information that is in already in their possession and/or within Defendants' "possession, control or custody, pursuant to Defendants' obligation to maintain employee records. . . ." Regardless of whether Defendants are in possession of requested documents, this in no way absolves Plaintiffs of their obligations to produce "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" to the extent such responsive material exists or comes into existence. See Fed. R. Civ. P. 26(b)(1); see also Land Ocean Logistics, Inc. v. Aqua Gulf Corp., 181 F.R.D. 229, 240 (W.D.N.Y. 1998) ("Unless excused by a court order, a requested party must provide relevant discovery regardless of whether it is already available to the requesting party."); Cornell Rsch. Found., Inc. v. Hewlett Packard Co., 223 F.R.D. 55, 68 (N.D.N.Y. 2003), opinion modified on reconsideration, No. 5:01 Civ. 1974, 2005 WL 5955715 (N.D.N.Y. Oct. 11, 2005) (compelling the requested party to produce documents that they alleged were already in the moving party's possession "or, alternatively, identify to which documents it is referring with sufficient clarity to allow the moving party to determine what documents are being referenced and whether they indeed are within the moving party's possession, custody or control.").

**Document Request No. 3** relates to any lawsuit, claim, or complaint of wage and hour violation(s) made by Plaintiffs at any time at any previous or current employer, including Defendants. At the meet and confer, Plaintiffs' counsel maintained Plaintiffs' objections as stated in Plaintiffs' Discovery Responses. Documents concerning complaints of Defendants' wage and hour violations are directly relevant to the instant lawsuit, and are particularly salient where, as is the case here, Plaintiffs allege that Defendants' records were inaccurate. Plaintiffs further allege that Defendants knew that Plaintiffs were not paid for time worked, including a specific allegation that Plaintiff Watt complained to her supervisor about working through her lunch breaks. Thus, any documents – not just those maintained by Defendants – corroborating or discrediting this allegation should be produced. Additionally, claims, or lawsuits concerning other employers are relevant in that they may show Plaintiffs' motive, opportunity, intent, preparation, plan, knowledge, absence of mistake, or lack of accident in reporting their time and/or bringing claims against Defendants.  See Fed. R. Evid. 404(b)(2).



**Document Request No. 5** relates to Plaintiffs' communications with third parties concerning their employment by Defendants and/or the allegations in the Amended Complaint. At the meet and confer, Plaintiffs' counsel maintained Plaintiffs' objections as stated in Plaintiffs' Discovery Responses. All documents, including communications with third parties, in Plaintiffs' possession concerning Plaintiffs' employment are relevant and should be produced as they may corroborate Plaintiffs' claims as to their time worked, the alleged "atmosphere of intimidation" Plaintiffs allege that Defendants maintained, or, for Plaintiff Thompson, the circumstances of his termination and/or extent of his alleged damages.

**Document Requests Nos. 6, 7, 9, 12, 15, 29, and 30** relate to Plaintiffs' allegations concerning their alleged time worked, schedules, timekeeping, and compensation. At the meet and confer, Plaintiffs' counsel maintained Plaintiffs' objections as stated in Plaintiffs' Discovery Responses. Regardless of their own record keeping obligations, Defendants are entitled to documents in Plaintiffs' possession corroborating or discrediting their claims as to time worked and compensation. In particular, because Plaintiffs claim that Defendants' records do not reflect Plaintiffs' actual time worked, documents in Plaintiffs' possession may provide a basis for substantiating Plaintiffs' alleged claims.

**Document Request Nos. 10 and 14** relate to Plaintiffs' allegations in Amended Complaint ¶¶ 30(m), 31(e) that Defendants "carefully cultivated" an "atmosphere of intimidation" by terminating employees for "reasons that were either bogus, trivial, or utterly subjective" and "on virtually any pretext if they got on the wrong side of their supervisors." These paragraphs further describe specific terminations of employees. Plaintiffs have alleged that this "atmosphere of intimidation" prevented them from complaining about their uncompensated work time. At the meet and confer, Plaintiffs' counsel maintained Plaintiffs' objections as stated in Plaintiffs' Discovery Responses. Defendants must be able to evaluate the reasonableness of Plaintiffs' failure to complain about uncompensated work time based on all available information and documents.

**Document Request Nos. 6, 11, 29, and 30** relate to Plaintiff Thompson's claims that Defendants unlawfully retaliated and discriminated against him. At the meet and confer, Plaintiffs' counsel maintained Plaintiffs' objections as stated in Plaintiffs' Discovery Responses. It is Defendants' position that Defendants did not discriminate or retaliate against Thompson and that Defendants were entitled to terminate Thompson. Plaintiff Thompson should be compelled to provide any evidence in his possession demonstrating that Defendants' reasons are pretextual.

**Document Requests Nos. 25 and 26** seek Plaintiffs' income tax returns, including and all supporting documents and attachments, and documents related to Plaintiffs' receipt of unemployment benefits. At the meet and confer, Plaintiffs' counsel maintained Plaintiffs' objections as stated in Plaintiffs' Discovery Responses. Courts will compel the production of income tax returns where (1) "the returns are relevant to the subject matter of the action" and (2)



November 16, 2021
Page 4

"there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable." See S.E.C. v. Cymaticolor Corp., 106 F.R.D. 545, 547 (S.D.N.Y. 1985). It is simply not credible that Plaintiffs do not have, in their possession and custody, their own tax returns.

As for relevance, Plaintiff Thompson has alleged that his termination was retaliatory under the New York Labor Law and discriminatory under New York State Human Rights Law and New York City Human Rights Law, and that he should be entitled to recover back and front pay, economic damages, and compensatory damages. Thus, Thompson's post-employment income is relevant to his claim for damages in connection with his discrimination and retaliation claims. See U.S. ex rel. Falus v. Interamerican Coll. of Physicians & Surgeons, Inc., No. 97 Civ. 1371, 1999 WL 813473, at *2 (S.D.N.Y. Oct. 12, 1999) ("[T]he Supreme Court and the lower federal courts have consistently held that claimants in employment discrimination cases are required to minimize their damages by using reasonable diligence to find other suitable employment, and have required the offset of earnings against lost wages in determining back pay awards."); Sadowski v. Tech. Career Institutes, Inc., No. 93 Civ. 455, 1994 WL 593765, at *1 (S.D.N.Y. Oct. 28, 1994) ("Information relating to plaintiff's post-termination . . . income is directly relevant to the measurement of plaintiff's damages, specifically the extent to which he has mitigated his loss of earned income from [defendant]."). Further, courts routinely order the production of unemployment insurance benefits in cases where post-termination earnings were an issue. See Sadowski, 1994 WL 593765, at *1 (ordering the production of documents showing income and unemployment insurance benefits); Henderson v. Rite Aid of New York, Inc., No. 16 Civ. 785, 2018 WL 3023378, at *4 (W.D.N.Y. June 18, 2018) ("The amount and duration of unemployment benefits received by plaintiff [alleging wrongful termination] is relevant to the calculation of plaintiff's damages.").

In regard to a compelling need, Thompson has not provided any evidence of his post-termination earnings despite Defendants' request for documents relating to damages Plaintiffs are seeking in this action. Moreover, at the meet and confer, Plaintiffs' counsel represented that though Plaintiffs would produce a damages calculation for Thompson's retaliation and discrimination claims, they would not produce supporting documents showing Thompson's earnings, including documents showing tax returns or the receipt of unemployment insurance benefits. Thus, the lack of any documentary sources reflecting Plaintiffs' post-termination earnings leaves a compelling need for the production of Plaintiff Thompson's tax returns.

Should the Court determine Thompson's privacy interests necessitate elevated protections for the production of his tax returns, the Court can order Thompson to produce the documents subject to a "For Attorneys' Eyes Only" designation so that Defendants' counsel may review them and determine whether there is "relevant information in the tax returns. . . [such that] broader disclosure of the information is necessary." See U.S. ex rel. Falus, 1999 WL 813473, at *3



November 16, 2021
Page 5

(ordering plaintiff who alleged that he was unlawfully terminated to produce portions of his tax returns reflecting earnings for the years after his employment was terminated).

Accordingly, Defendants request that the Court compel Plaintiff Thompson to produce his income tax returns and, if applicable, documents related to his receipt of unemployment benefits.

### B. Deficiencies in Interrogatory Responses

Defendants further respectfully request that the Court compel Plaintiffs to cure deficiencies in their responses to the following Interrogatories:

**Interrogatories No. 3, 8, 9** seek the identification of persons who Plaintiffs supervised and/or evaluated, or who supervised Plaintiffs during Plaintiffs' employment with Defendants. Plaintiffs object to these Interrogatories on the basis that they allegedly seek information that is already in the possession of Defendants. At the meet and confer, Plaintiffs' counsel maintained Plaintiffs' objections as stated in Plaintiffs' Discovery Responses. However, Plaintiffs bear the burden of substantiating their claims and Plaintiffs' allegations concerning their duties, time worked, timekeeping, etc. implicate those who worked with or under Plaintiff. Moreover, "the names of any supervisors who allegedly were engaged in the wrongful conduct is relevant to establish that any time Plaintiffs worked without compensation can be attributed to the employer[.]" See Gordon v. Kaleida Health, No. 08 Civ. 378, 2012 WL 2953116, at *7 (W.D.N.Y. July 19, 2012). Thus, Defendants request that the Court compel Plaintiffs to identify these individuals, particularly to determine if information in Plaintiffs' possession matches that in Defendants' possession, and to the extent Plaintiffs are claiming that Defendants' documents are inaccurate.

\*\*\*

We appreciate Your Honor's attention to this matter.

Respectfully submitted,

*/s/ Jalise Burt*

cc:   All counsel of record (via ECF)