USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _2/28/2022_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

SHAUN THOMPSON, *et al.*,

                       Plaintiffs,

      -against-

URBAN RECOVERY HOUSE, LLC, *et al.*,

                     Defendants.

-------------------------------------------------------------------X

**REPORT &**
**RECOMMENDATION**
20-CV-9581 (PGG) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Paul G. Gardephe, United States District Judge:**

      Plaintiffs Shaun Thompson and Marcella Watt, on behalf of themselves and those similarly situated, bring this action against Urban Recovery House, LLC, Elev8 Center New York, LLC, and Donna Mae Depola, alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Thompson brings additional claims of discrimination and retaliation pursuant to NYLL, New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"). Defendants have moved to dismiss the First Amended Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, I recommend that the motion be granted, although on grounds different from those relied on by Defendants.

# I.      BACKGROUND

### A. Facts

The following facts are taken from the First Amended Complaint ("FAC") and are accepted as true for purposes of the pending motion.  *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Defendants Elev8 Center New York, LLC and Urban Recovery House, LLC ("Corporate Defendants") allegedly operate as a single integrated enterprise to run addiction treatment facilities in New York City, known as Elev8 and Urban Recovery.  First Amended Complaint ("FAC"), Dkt. No. 30, ¶ 9.  Depola is President of the Corporate Defendants.  *Id.* ¶ 16.  Defendants employed Thompson as a counselor at Elev8 from December 2018 through December 2019, and again at Urban Recovery from March 2020 through April 2020.  *Id.* ¶ 30(a).  Defendants employed Watt as a patient care coordinator at Elev8 beginning in September 2018.  *Id.* ¶ 31(a).

Throughout his employment with Defendants, Thompson alleges that he "routinely worked in excess of forty (40) hours each week."  *Id.* ¶ 30(h).  He claims that he was scheduled to work five days per week, from 7:30 a.m. to 4:00 p.m.  *Id.* Defendants automatically deducted a one-hour meal break during each of his shifts pursuant to a February 2019 switch from a manual system of clocking in and out.  *Id.* ¶ 30(i).  Thompson rarely took the full hour break, however, as his immediate supervisor and Defendants' compliance officer allegedly required him to perform work during that time period.  *Id.*  According to Plaintiffs, Defendants knew that

counselors would work through their meal breaks. *Id.* ¶¶ 30(k)–(l).  Plaintiffs further allege that Defendants "routinely required" Thompson to stay after his shift ended at 4:00 p.m. and perform work on the weekends, for which Defendants paid him straight time at a rate of $18.50 per hour.  *Id.* ¶ 30(h).

When Defendants hired Watt, in September 2018, she was scheduled to work a total of 17 hours per workweek, which increased to 25.5 hours per workweek from April 2018 through March 2019.  *Id.* ¶ 31(a).  Then, from March 2020 through the filing of the First Amended Complaint, Watt was regularly scheduled to work five days per week from 3:00 p.m. to 11:30 p.m., and paid at a rate of $15.00 per hour. *Id.*[1]  Defendants automatically deducted a one-hour meal break from Watt each shift, despite the fact that she "rarely took the full hour break, as she was routinely required to perform work during that time period."  *Id.* ¶ 31(b).  According to Watt, she had a legal duty to supervise patients on her floor, and she could not leave without another coordinator present.  *Id.* ¶¶ 31(c)–(d).  She alleges that Defendants "would not ensure that another patient care coordinator was available to fill in" during her lunch break, which therefore required her to keep working.  *Id.*  Watt further contends that Defendants knew she was performing this off-the-clock work because she complained to a supervisor, who did "nothing to rectify the problem."  *Id.* ¶ 31(e).  Finally, Watt claims that Defendants "routinely directed her

---

[1] Plaintiffs do not account for the time period between March 2019 and March 2020. *See id.* ¶31.

to begin performing off the clock work" on the occasions when she arrived at Elev8 approximately 30 minutes prior to the start of her scheduled shift.  *Id.* ¶ 31(f).

Aside from their wage-and-hour complaints, Plaintiffs allege an "atmosphere of intimidation" at Urban Recovery and Elev8, noting that "employees were being routinely terminated for reasons that were either bogus, trivial, or utterly subjective."  *Id.* ¶ 30(m).  For instance, they claim one employee "was fired after he dozed off a single time.  Another was terminated because she arrived at work a few minutes late because of childcare issues."  *Id.* ¶ 31(e).  Plaintiffs believed that "any complaints would jeopardize" their employment.  *Id.*

Before Thompson began his second employment period, a clinical supervisor at Urban Recovery named Trevor allegedly "expressly advised" him to "be wary" of the Operations Director at Urban Recovery, Manny.  *Id.* ¶¶ 30(c)–(d).[2]  According to Thompson, Trevor informed him that Manny had a reputation for harassing employees and making discriminatory comments, and even though Defendants were made aware of Manny's "verbal harassment and discriminatory conduct," they had allegedly "routinely turned a blind eye and deaf ear."  *Id.* ¶ 30(d).  Plaintiffs contend that a former, aggrieved employee posted a comment on Facebook on July 29, 2020, calling Urban Recovery the "[w]orst company to work for."  *Id.* ¶ 30(f).  The now-deleted comment included a complaint that Manny "[c]heats you out of the pay he promises you & overtime hours. People with no experience nor degrees []

---

[2] The last names of Manny and Trevor are unidentified.  *Id.*

certifications or education get paid more[] (especially if you're a man).  The absolute most horrible experience I've ever had working for a company."  *Id.*

In April 2020, Thompson observed that the employee assigned to take temperatures at Urban Recovery due to COVID-19 protocols, Victoria, "disregarded the baseline health and safety requirement of wearing a mask," in violation of the face mask mandate issued by the New York state government.  *Id.* ¶ 30(q).[3] Thompson requested that she use personal protective equipment while administering temperature checks, to which Victoria objected and called over Manny.  *Id.* ¶ 30(r).  Plaintiffs contend that Manny then "proceeded to hurl a series of racially discriminatory insults and threats of physical injury" at Thompson.  *Id.* These included: "I don't give a f[***] if [Victoria is] not wearing gloves, take your temp or get the f[***] out of here. Or you can wait until 4:00 p.m. and fight me;" and "Get your black a[**] out of here! Get out of my building!"  *Id.*[4]  Defendants then allegedly informed Thompson not to return to the workplace until further notice, and subsequently notified him later that same work week that his employment was terminated effective immediately.  *Id.* ¶ 30(s).

---

[3] Victoria's last name is unidentified.  *Id.*

[4] Plaintiffs allege that both Manny and Victoria are "Caucasian and/or otherwise fair in complexion," *id.* ¶ 30(r), while Thompson and Trevor "are both African-American."  *Id.* ¶ 30(d).

### B. Procedural History

Plaintiffs initiated this action against Elev8 Foundation, Inc., Urban Recovery House, LLC, Lee Weiss, and Depola on November 13, 2020. Dkt. No. 1.[5] On April 30, 2021, Plaintiffs filed the First Amended Complaint. Dkt. No. 30. Elev8 Foundation, Inc. was terminated as a defendant on April 30, 2021, and replaced in the FAC by Elev8 Center New York, LLC. Dkt. Nos. 30, 38.

In their First Amended Complaint, Thompson and Watt assert collective and class-wide claims for: (1) unpaid overtime and unpaid wages due to time-shaving under the FLSA; and (2) unpaid overtime, unpaid wages due to time-shaving, and statutory violations under NYLL. FAC ¶¶ 1, 2, 39–49, 50–56. Thompson separately asserts claims against Defendants for: (1) retaliation in violation of Sections 215 and 200 of NYLL (¶¶ 57–65); (2) race discrimination in violation of NYSHRL Section 296 (¶¶ 66–71); and (3) race discrimination in violation of NYCHRL Section 8-107 (¶¶ 72–77). *Id.* In their pleading, Plaintiffs defined the collective as "all current and former non-exempt employees, including, but not limited to, the counselors, nurses, and patient care coordinators, employed by

---

[5] Plaintiffs named Lee Weiss as an individual defendant in this suit, and allege that he is the Chief Executive Officer of the Corporate Defendants. FAC ¶ 15. Plaintiffs never served Weiss, however, and he has not otherwise appeared in this action. As such, he should not be considered a party in the case. *See* Dkt. No. 17 (summons for Weiss returned unexecuted); Dkt. Nos. 22, 24, 25 (Defendants' attorneys' notice of appearance on behalf of all defendants except Weiss); Dkt. No. 27 (letter-motion filed by Defendants' explained that representation did not include Elev8 at that time, but made no reference to Weiss); Dkt. Nos. 32, 33 (after First Amended Complaint filed, summons executed as to Elev8 Center New York, LLC., but no summons executed as to Weiss).

Defendants on or after the date that is six (6) years before the filing of the Complaint in this case." *Id.* ¶ 19.  Plaintiffs defined the class as "all current and former non-exempt employees, including but not limited to the counselors, nurses and patient care coordinators, who were employed and unjustly compensated by Defendants, throughout New York State, on or after the date that is six (6) years before the filing of the Complaint in this case." *Id.* ¶ 22.

Defendants moved to dismiss the FAC on June 4, 2021.  Motion to Dismiss, Dkt. No. 42 (entered on July 16, 2021); Defendants' Memorandum of Law in Support of the Motion to Dismiss ("Def. Mem."), Dkt. No. 43; Accompanying Materials in Support of Motion to Dismiss, Dkt. Nos. 44–46.  Plaintiffs filed opposition papers on June 30, 2021.  Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Opp."), Dkt. No. 47 (entered on July 16, 2021).  Defendants filed reply papers on July 16, 2021.  Memorandum of Law in Further Support ("Def. Rep."), Dkt. No. 48.  The motion was referred to me for a report and recommendation on January 3, 2022.  Dkt. No. 60.

## II.   DISCUSSION

### A. Legal Standards on a Motion to Dismiss

Rule 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In considering a Rule 12(b)(6) motion, a court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.  *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (quoting *Elias v. Rolling*

*Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017)); *Chase Grp. All. LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010).

To survive dismissal, a plaintiff must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Facial plausibility exists when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Moreover, "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.[6]

---

[6] Defendants' motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) only pertains to Thompson's' discrimination and retaliation claims, which he has agreed to refile in State Court and the Court otherwise recommends be dismissed. *See infra* Section C.

### B. Wage Claims

Defendants move to dismiss the FLSA and NYLL wage claims for failure to state a claim upon which relief can be granted.  Def. Mem. at 5–6.  While Plaintiffs do not cite to the applicable FLSA and NYLL provisions in the FAC when asserting their claims for relief (in Counts I and II), the Court interprets their claims to be for overtime compensation pursuant to 29 U.S.C. § 207(a)(1) and NYLL §§ 650 *et seq*., as well as for "gap-time."  FAC ¶¶ 1, 2, 20, 25, 30(i), 34, 44, 53.  For the reasons which follow, I recommend dismissing these claims without prejudice.

#### 1. Legal Standards

Subject to certain exceptions, both the FLSA and NYLL require that employees who work more than 40 hours per week be compensated for overtime work at a rate of one and one-half times their regular rate of pay.  29 U.S.C. § 207(a)(1); NYLL §§ 650 *et seq*.; *see also Kim v. 511 E. 5th St., LLC*, 133 F. Supp. 3d 654, 659 (S.D.N.Y. 2015); *Williams v. Bier Int'l, LLC*, No. 14-CV-3894 (LTS) (JCF), 2015 WL 4461668, at *1–2 (S.D.N.Y. July 21, 2015).  Overtime claims under NYLL "are evaluated under the same standards as claims under the [FLSA]."  *Hobbs v. Knight-Swift Transportation Holdings, Inc.*, No. 21-CV-1421 (AT), 2022 WL 118256, at *3 (S.D.N.Y. Jan. 12, 2022).

To state a plausible overtime claim pursuant to the FLSA, a plaintiff must "sufficiently" allege: (1) "40 hours of work in a given workweek," and (2) "some uncompensated time in excess of the 40 hours."  *Lundy v. Catholic Health System of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).  Those requirements are not met

by "general assertions" that a plaintiff "typically, occasionally, or regularly worked more than forty hours a week, without more . . . ." *Limauro v. Consolidated Edison Co. of New York, Inc.*, No. 20-CV-3558 (CM), 2021 WL 1226872, at *2 (S.D.N.Y. Mar. 31, 2021) (cleaned up).  Rather, to survive a Rule 12(b)(6) motion, a plaintiff must "provide sufficient detail about the length and frequency of [his or her] unpaid work to support a reasonable inference that [he or she] worked more than forty hours in a given week." *Hobbs*, 2022 WL 118256, at *3 (citing *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013)).  A plaintiff has not provided sufficient detail when "there is no way to identify from the allegations which weeks [Plaintiff] was required to work more than forty hours." *Limauro*, 2021 WL 1226872, at *2 (citing *Nakahata*, 723 F.3d at 201).

Further, the Second Circuit has held that the FLSA does not provide for recovery on a gap-time claim. *Lundy*, 711 F.3d at 116.  "A gap-time claim is one in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Id.* at 115.  In the Second Circuit, as long as an employee is being paid at minimum wage or higher, the FLSA "does not provide recourse for unpaid hours below the 40-hour threshold, even if the employee also works overtime hours the same week." *Id.* at 116.

### 2. Application

Plaintiffs do not adequately allege either (1) 40 hours of work in a given workweek, or (2) sufficient facts demonstrating uncompensated overtime worked.

First, with respect to hours worked, Thompson alleges that he was regularly scheduled to work five days per week from 7:30 a.m. to 4:00 p.m.  FAC ¶ 30(h). While he claims this is a "42.5 hour workweek," this schedule in fact amounts to a 37.5 hour work week inclusive of his one-hour lunch break.  *See id.* ¶ 30(i). Likewise, Watt alleges that beginning in March 2020, she worked a regular schedule of five days per week from 3:00 p.m. to 11:30 p.m.  *Id.* ¶ 31(a).[7]  While she too claims this is a "42.5 hour workweek," her regular meal breaks also result in what amounts to a 37.5 hour workweek.  *Id.* ¶ 31(a)–(b); *see also Mokrov v. Aeroflot Russian Airlines*, No. 20-CV-588 (GBD), 2021 WL 2435801, at *3 (S.D.N.Y. Jun. 15, 2021) ("when three or four weekly hour-long meal breaks are included [in a 33 to 44-hour work week], no scheduled work week exceeds forty work hours per week"); *Limauro v. Consolidated Edison Co. of New York, Inc.*, No. 20-CV-3558 (CM), 2021 WL 466952, at *12 (S.D.N.Y. Feb. 9, 2021) (because it is customary for shifts to include breaks, a plaintiff who alleges 42.5 hours a week worked based on a normal shift of 7:00 a.m. to 3:30 p.m. would need to plead that he was not allowed any breaks during his shift to state a plausible claim of failure to pay overtime).  Thus, Plaintiffs do not allege a regular workweek schedule of more than 40 hours at any time.

Additionally, although Plaintiffs allege that they each worked time beyond their regular schedules through uncompensated lunch breaks, and before or after

---

[7] Watt does not allege a workweek of more than 40 hours prior to March 2020.  *See id.*

shifts, they do not indicate by how much.  Thompson contends that he was "routinely" required to stay after 4:00 p.m. and perform work on weekends as needed, for which he was paid a straight hourly rate.  FAC ¶ 30(h).  He also claims that "throughout" his employment with Defendants, he "was not compensated for all his hours worked" because he "rarely took the full hour [lunch] break as he was required to perform work during that time period" by his immediate supervisor and Defendants' compliance officer.  *Id.* ¶ 30(i).  Watt claims that because her position included a legal duty to supervise patients on her floor, she could not leave without another coordinator present; she alleges that Defendants "would not ensure that another patient care coordinator was available to fill in," during her lunch break, which required her to keep working.  *Id.* ¶ 31(c).  She contends that Defendants knew she was performing this off-the-clock work because she complained to a supervisor, who did "nothing to rectify the problem."  *Id.* ¶ 31(d). Further, Watt claims that Defendants "routinely directed her to begin performing off the clock work" before she would clock in.  *Id.* ¶ 31(f).

Similarly, in *Lundy*, plaintiffs had alleged that their employer: (1) used a timekeeping system that automatically deducted time from paychecks for meals and other breaks even though employees were "frequently" required to work through their breaks; and (2) failed to pay for time spent working before and after scheduled shifts.  711 F.3d at 111.  The Second Circuit upheld the dismissal of the *Lundy* plaintiffs' FLSA overtime claim, as there was "no plausible claim that the FLSA was violated, because Plaintiffs [did] not allege[] a single workweek in which they

worked at least 40 hours and also worked uncompensated time in excess of 40 hours." *Lundy*, 711 F.3d at 111.  Likewise, another court in this district recently dismissed a complaint even when plaintiffs specifically pleaded that they worked an uncompensated meal break "at least two times a month, after already working at least 40 hours in a work week," but did not identify "even approximately, how many hours in excess of forty that they worked per week or when they were required to do so." *Mokrov*, 2021 WL 2435801, at *3–4.

Here, neither Watt nor Thompson has specifically alleged "a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours." *Lundy,* 711 F.3d at 114.  As an initial matter, their schedules only amounted to 37.5 hours of work per week.  Plaintiffs do not provide the alleged amount of time worked outside of their shift, so it is not clear whether or not any extra time in fact amounted to more than 2.5 hours per week, causing Plaintiffs' hours to exceed 40.  Additionally, Plaintiffs do not provide the dates of any particular weeks in which they allegedly worked overtime; rather, their allegations refer only to what is "routine."  FAC ¶¶ 30(h), 31(f); *see Amponin v. Olayan America Corp.*, No. 14-CV-2008 (TPG), 2015 WL 1190080, at *3 (S.D.N.Y. Mar. 16, 2015) (dismissing overtime FLSA and NYLL claims when plaintiff alleged "neither a specific week during which she worked more than forty hours, nor the specific number of hours she worked during any such week.").

Allegations that 30-minute meal breaks were "typically" missed or interrupted, and uncompensated work time before and after scheduled shifts

"typically" resulted in additional time per shift, may give rise to a possibility that more than 40 hours were worked, but they are nothing more than "speculation." *Lundy*, 711 F.3d at 114–15.  In *Lundy*, the Second Circuit observed that such allegations "suppl[ied] nothing but low-octane fuel for speculation, not the plausible claim that is required."  *Id.* at 115.  The same is true here, where the allegations by Thompson and Watt are "void of any facts regarding the nature and frequency of [the] interruptions during the relevant time period or how often meal breaks were missed altogether as opposed to just interrupted . . . [a]bsent such specificity, there is no claim for compensable time."  *Id.* at 112.

Further, because the Second Circuit has ruled that the FLSA does not provide for a remedy on allegations of unpaid wages under 40 hours worked per week ("gap-time" or "time-shaving"), *Lundy*, 711 F.3d at 116, Plaintiffs cannot succeed on those claims as a matter of law.

For these reasons, Plaintiffs have not pleaded sufficient details to allege plausible overtime claims in the First Amended Complaint.[8]

---

[8] In addition to the overtime claims brought under both the FLSA and NYLL, Plaintiffs further allege that Defendants failed to provide proper wage statements and wage and hour notices in compliance with NYLL.  FAC ¶¶ 25, 36, 54–55. Where, as recommended here, a district court dismisses all claims over which it has original jurisdiction, it "may decline to exercise supplemental jurisdiction" over state law claims.  *Tortorici v. Bus-Tev, LLC*, No. 17-CV-7507 (PAC) (KHP), 2021 WL 4177209, at *3 (S.D.N.Y. Sept. 14, 2021) (citing 28 U.S.C. § 1367(c)(3); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)).  The Court therefore recommends that these state law claims likewise be dismissed without prejudice.

### 3.  Grounds for Dismissal

Even though Defendants do not rely on this argument in support of their

motion, the Court has authority to dismiss these claims without prejudice for lack of

sufficiently pleaded details.  Specifically, a court "has the power to dismiss a

complaint sua sponte for failure to state a claim, so long as the plaintiff is given

notice and 'an opportunity to be heard.'"  *Cintron v. Shield*, No. 18-CV-1619 (RA),

2019 WL 4194429, at *3 (S.D.N.Y. Sept. 3, 2019) (quoting *Wachtler v. Cty. of

Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994)).

The wage claims asserted here "plainly fail" for lack of sufficient details

alleged in the complaint.  *Perkins v. Kamco Supply Corp.*, No. 06-CV-5054 (DAB)

(DF), 2007 WL 4207193, at *3 (S.D.N.Y. Nov. 27, 2007).  However, Defendants do

not raise this argument in support of their motion.  Rather, they contend that they

"received no actual or constructive knowledge of this alleged uncompensated work

time since Plaintiffs failed to report it as required by Defendants' policies."  Def.

Mem. at 1–2.  Plaintiffs counter that Defendants' argument is based on a dispute of

fact, and is thus more appropriately made at the summary judgment stage rather

than on a motion to dismiss.  *See* Pl. Opp. at 10.  In *Perkins*, the court determined

that it need not resolve an argument defendant presented when the claim would

"plainly fail for another reason, not raised by Defendant."  *Perkins*, 2007 WL

4207193, at *3.  Similarly, here, the wage claims fail for lack of specificity, even

though Defendants did not raise that argument.  Thus, the Court may recommend

granting the motion to dismiss on other grounds, and it need not adjudicate the constructive notice argument.

While a court must afford a plaintiff the opportunity to be heard before dismissing a claim *sua sponte*, *see Wachtler*, 35 F.3d at 82, granting leave to amend a complaint can suffice as such opportunity.  *See, e.g., Mir v. Zucker,* No. 19-CV-6374 (CM), 2019 WL 5693695, at *8 (S.D.N.Y. Nov. 1, 2019) ("Because the Court dismisses sua sponte some of Plaintiff's claims for failure to state a claim, the Court grants Plaintiff leave to replead his claims in an amended complaint to be filed within thirty days of the date of this order."); *see also Perkins*, 2007 WL 4207193, at *3, n. 3 (affording plaintiff an "opportunity to respond" by entertaining a motion for reconsideration).  As discussed below, the Court recommends granting leave to amend the complaint.  Leave to amend will therefore provide Plaintiffs the requisite opportunity to be heard.

In sum, I recommend the motion to dismiss the overtime claims be granted without prejudice.

### C. State Law Retaliation and Discrimination Claims

Thompson separately brings New York state law claims of discrimination and retaliation under NYLL, NYSHRL, and NYCHRL against Defendants for allegedly terminating him due to his race after he complained about another employee's alleged failure to follow mandated COVID protocols.  FAC ¶ 57–77.  For the reasons which follow, I recommend dismissing these claims without prejudice as well.

### 1.  Legal Standard

On issues of state law, federal courts exercise supplemental jurisdiction where the claims arise out of a "common nucleus of operative fact" as the federal claims over which they have original jurisdiction, such that they "form part of the same case or controversy."  28 U.S.C. § 1367; *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004).  If a district court has dismissed all claims over which it has original jurisdiction, it "may decline to exercise supplemental jurisdiction."  *Tortorici*, 2021 WL 4177209, at *3.

Even if the original jurisdiction claims are not dismissed, the "mere fact" of a common employer/employee relationship between the parties does not establish supplemental jurisdiction "without evidence of some further factual connection between the claims."  *Guerra v. Trece Corp.*, No. 18-CV-625 (ER), 2020 WL 7028955, at *6 (S.D.N.Y. Nov. 30, 2020) (collecting cases).  To form part of the same case or controversy, the claims must "arise out of the same series of events."  *Id.* at *7 (citing *Dervisevic v. Wolfgang's Steakhouse, Inc.*, No. 19-CV-814 (VEC), 2019 WL 6251197, at *3 (S.D.N.Y. Nov. 22, 2019)).  It is "well-established" in this District that "federal wage-and-hour claims, which can be resolved through testimony and documents regarding the hours Plaintiff worked and the compensation he received, are, in general, factually distinct from state discrimination claims, which turn on whether Plaintiff suffered adverse employment actions, and whether racial or other discriminatory animus motivated those actions."  *Dervisevic*, 2019 WL 6251197, at *2 (cleaned up).

## 2.  Application

As an initial matter, Thompson expressly does not oppose Defendants'

argument that supplemental jurisdiction should not be exercised here, and has

agreed to refile his discrimination and retaliation claims in state court.  Pl. Opp. at

1.  Thompson has therefore "abandoned any argument that [his] FLSA wage-and-

hour claims derive from the same bundle of operative facts as [his] claims for . . .

discrimination under the New York State and City Human Rights Laws."

*Dervisevic*, 2019 WL 6251197, at *2.

Beyond Thompson's concession, the Court recommends Thompson's state law

retaliation and discrimination claims be dismissed because the facts which give rise

to these claims do not "substantially overlap" with the facts that support his wage

claims.  *Guerra*, 2020 WL 7028955, at *7.  Thompson's retaliation and

discrimination claims arise out of an incident in which he complained about another

employee not following mandated COVID protocol requirements.  FAC ¶¶ 30(n)–

(s).  In response, Manny allegedly yelled, among other things, "Get your black a[**]

out of here!" and a week later Thompson was terminated.  *Id.* ¶ 30(r).  Plaintiffs

allege that another employee had previously warned Thompson that Manny had a

reputation for "harassing employees and discriminatory comments."  *Id.* ¶

30(d).  Thompson asserts that he would not have been treated that way "but for the

fact that [he] was African American." *Id.* ¶ 30(r).

As in *Dervisevic*, the employment relationship between Plaintiffs and

Defendants is the "sole fact" connecting the discrimination and retaliation claims to

18

the FLSA claims, and "that relationship is not enough to sustain supplemental jurisdiction." *Dervisevic*, 2019 WL 6251197, at *2.  In *Guerra*, an FLSA case, a state law pregnancy discrimination claim was also brought against an employer after the plaintiff was told "not to come back to work" due to the pregnancy.  *Guerra*, 2020 WL 7028955, at *7.  That comment did not provide a basis for supplemental jurisdiction when the plaintiff did not allege "any sort of relationship between this exchange and Defendants' FLSA and NYLL violations" other than a common employer relationship.  *Id*.  Here, as in *Guerra*, Plaintiffs "[do] not allege any sort of relationship" between the comments made and actions taken against Thompson, and Defendants' alleged FLSA or NYLL violations, "aside from the existence of a common employer relationship."  *Id*.

   Because the facts giving rise to the FLSA claim do not share a common nucleus of operative fact with those giving rise to the state law retaliation and discrimination claims, and because Thompson has abandoned them, I recommend dismissing them without prejudice.

### D. Leave to Amend

   Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, a district court should "freely give leave [to amend] when justice so requires," but "has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Where a cause of action is dismissed due to deficient pleading, leave to amend should generally be granted."  *Watkins v. City of New York*

*Kings Cty.*, No. 14-CV-1512 (RRM) (LB), 2014 WL 4075769, at *4 (E.D.N.Y. Aug. 15, 2014) (collecting cases); *see also Limauro*, 2021 WL 466952, at *12 (leave to amend granted on failure-to-pay-overtime claim for plaintiff to allege specificity needed to survive motion to dismiss).

The pending motion is the first adjudication of the claims on the merits, and a second amended complaint would not prejudice Defendants given the pretrial posture of the case, in which discovery is ongoing.  *See Amponin*, 2015 WL 1190080, at *4 (leave to amend granted for overtime claims under the FLSA and NYLL when plaintiff had "never had the opportunity to amend her complaint").  Thus, the Court recommends that Thompson and Watt be given an opportunity to allege the requisite facts, if they exist, to make their overtime claims under the FLSA and NYLL cognizable.

## III.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the First Amended Complaint should be granted.  The Court should decline to exercise supplemental jurisdiction over Thompson's state law retaliation and discrimination claims, but Plaintiffs should be given leave to amend their FLSA claims and analogous NYLL claims.

Finally, Plaintiffs have recently submitted a letter-motion requesting a conference in anticipation of a motion for conditional certification.  Dkt. Nos. 61–63.  The Court will deny that request without prejudice until the motion to dismiss addressed in this Report and Recommendation is resolved.

## PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Opinion to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul G. Gardephe, United States Courthouse, 40 Foley Square, New York, New York. Any requests for an extension of time for filing objections must be directed to Judge Gardephe.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Garwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: February 28, 2022
    New York, New York

_____
JAMES L. COTT
United States Magistrate Judge